# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS SAULLO, | |
| Plaintiff, | CIVIL ACTION NO. 3:10-CV-00824 |
| v. | |
| BOROUGH OF NESQUEHOING, et al., | (JUDGE CAPUTO) |
| Defendants. | |

## **MEMORANDUM**

The plaintiff, a former Nesquehoing police officer, was terminated from his position on July 22, 2009. Subsequently, he filed an amended complaint against the borough, its council members, and the police chief pursuant to 42 U.S.C. § 1983. Presently before the Court is the defendants' motion to dismiss for failure to state a claim upon which relief can be granted. (Doc. 14.) For the reasons explained below, the motion will be granted in part and denied in part.

## I. BACKGROUND[1]

Plaintiff Nicholas Saullo was hired in July of 2007 as a part-time police officer. Following his hire, he was trained by Chief Sean Smith. He trained for about six weeks, and then worked for about six months. In January of 2008, the Borough of Nesquehoing advertised an opening for a full-time officer position. A written and physical exam were given in February, Saullo ranked first, and he was hired on July 23, 2008. He was required to begin his term with a six month probationary period, which would have ended on January 23,

---

[1] For purposes of deciding this motion, the facts in the complaint are assumed to be true, and are stated in the light most favorable to the plaintiff.

2009. He completed six months without incident, and his probation was not extended.

In February of 2009, Chief Smith accused Saullo of violating a standard operating procedure because he did not take a fellow officer for a blood alcohol test following a collision. However, the plaintiff maintains that no standard procedure existed, and that pursuing a blood alcohol test was entirely within his discretion. Saullo received a written warning,[2] which did not reference any standard operating procedure that had been violated.

In June of 2009, Saullo was on duty and a deer ran into the side of his police vehicle around midnight. He tried to contact Chief Smith, but could not reach him. Saullo then contacted Mayor Walck, who advised him to prepare an incident report before the end of his shift. The following morning, Saullo picked Chief Smith up to take him to work, told him about the accident, and pointed out the damage on the vehicle. Chief Smith said that he never would have noticed the damage had Saullo not pointed it out.

Nevertheless, Chief Smith ordered Saullo to go for a blood test at the insistence of borough council member Frank DiMicelli. The test results were negative for alcohol and controlled substances.

The following month Saullo received another evaluation, which Saullo avers was "for the purposing [*sic*] of removing Plaintiff from probation as a full time borough officer." Chief Smith reviewed the evaluation with Saullo, and promised to give him a copy on his next shift; however, he did not supply a copy for over a week. Saullo eventually obtained a copy from the borough secretary. During this time, the chief had added a reference to the previous incident in which Saullo did not require a fellow officer to get a blood alcohol test.

---

[2] The complaint reads that Saullo received a "written verbal warning." The insertion of the word "verbal" appears to be accidental.

2

On July 22, 2009, the borough council met in an executive session. The mayor was barred from attending. During the meeting, it was represented that Saullo had never been evaluated for removal from his initial probationary status. In fact, his probation had expired. The council then voted to terminate Saullo's employment. The purported reasons for terminating Saullo included his alleged failure to comply with a quota system by writing traffic tickets. Saullo contends that the quota system is illegal, and that he had acted in accordance with Chief Smith's direct instructions. Additionally, Saullo was falsely accused of not answering radio calls or patrolling adequately.

Later that evening, Saullo was called back the station and terminated by Chief Smith and council member Sniscak.

Saullo alleges "upon information and belief" that council members DeMarco, Zabroski, DeMicelli, and Sniscak voted to terminate Saullo "in order to replace him with a political favorite, Jeffrey Ohl." Additionally, Saullo avers that these four council members and Chief Smith perceived Saullo "as aligned with their political rival, Mayor Walck." Mayor Walck advised Saullo that he thought Saullo's rights had been violated because the mayor was barred from the meeting, and that Saullo was entitled to a written explanation of his termination within ten days. However, Saullo has never received such an explanation. The following Monday, defendant DeMarco tried to find a way to "get around the civil service commission" to replace Saullo with Jeffrey Ohl, the alleged "political favorite" of the borough council members.

Saullo filed an amended complaint on May 19, 2010 against the borough, the four council members who allegedly voted to terminate him, and Chief Smith. At Count I of the amended complaint, he brings a claim under 42 U.S.C. § 1983. He asserts that the

3

defendants violated his rights "by depriving him of his constitutionally protected right to political association and tenured public employment as guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in that Plaintiff was terminated from his position based upon her [*sic*] political affiliation or the perception thereof."

Saullo further claims that the defendants' termination of Saullo's employment and "the subsequent false and stigmatizing allegations" deprived him of his constitutional rights under the First and Fourteenth Amendments.

The defendants move to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 14.) The motion is ripe for disposition.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. In deciding a 12(b)(6) motion, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Dismissal is appropriate only if a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which is to say "enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." *In re Ins. Brokerage Antitrust*

4

*Litig.*, 618 F.3d 300, 319 (3d Cir. 2010) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (alteration in *Arista Records*)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* at 1950.

In line with the pleading standards established by the Supreme Court's decisions in *Twombly* and *Iqbal*, the Third Circuit has instructed district courts to conduct a two-part analysis when disposing of a motion to dismiss for failure to state a claim. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This analysis proceeds as follows:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Id.* at 210–11 (internal citations omitted).

The "plausibility paradigm announced in *Twombly* applies with equal force to analyzing the adequacy of claims of employment discrimination." *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 322 (3d Cir. 2008).

5

**B. First Amendment Political Patronage Claim**

Political patronage exists when "public employees hold their jobs on the condition that they provide, in some acceptable manner, support for the favored political party." *Elrod v. Burns*, 427 U.S. 347, 359 (1976). Public agencies violate the First Amendment rights of employees by making employment decisions based on political association where the employee is in a position that does not involve policy making. *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75 (1990)*; Branti v. Finkel*, 445 U.S. 507, 514–15 (1980); *Elrod,* 427 U.S. at 372–73. Public agencies also violate the First Amendment when they demote or discharge public employees "simply to make room for political supporters," because "[a] citizen's right *not to support* a candidate is every bit as protected as his right *to support* one." *See Bennis v. Gable*, 823 F.2d 723, 731 (3d Cir. 1987) (citing *Roberts v. U.S. Jaycees*, 467 U.S. 609, 623 (1984) ("Freedom of association . . . plainly presupposes a freedom not to associate.") (emphasis added)).

To make out a prima facie case of discrimination on the basis of political association in violation of the First Amendment, a plaintiff must show three elements: "(1) [he] was employed at a public agency in a position that does not require political affiliation, (2) [he] was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007) (citing *Stephens v. Kerrigan*, 122 F.3d 171, 176 (3d Cir. 1997)). "Implicit in the third prong is a requirement that the plaintiff produce sufficient evidence to show the defendant knew of plaintiff's political persuasion." *Goodman v. Pa. Turnpike Comm'n*, 293 F.3d 655, 664 (citing *Laskaris v. Thornburgh*, 733 F.2d 260,

265 (3d Cir. 1984)).

The defendants do not contest that the plaintiff has established the first prong; by alleging he was employed as a police officer, Saullo has shown he was employed at a public agency in a position that does not require political affiliation.

Saullo pleads sufficient facts to support the second and third prongs of his claim. The second prong requires that Saullo plead facts establishing that he was engaged in constitutionally protected conduct. Here, he alleges that the defendants concocted false accusations for the purpose of ousting him to make room for a political favorite. The facts alleged in the complaint, viewed in the light most favorable to Saullo, raise the fair inference that—unlike Jeffrey Ohl—Saullo was not a "political favorite." Thus, the complaint suggests that Saullo was engaged in the constitutionally protected conduct of *failing to be allied* with the political interests that made Ohl a "favorite."

The third prong requires that the defendants knew of the plaintiff's political persuasion and that the plaintiff's protected conduct was a substantial or motivating factor in his termination. Saullo pleads facts suggesting that the defendants knew of his political persuasion. Paragraph 56 of the complaint states that on information and belief "the four council members who voted to terminate [Saullo], and Chief Smith, perceived [Saullo] as aligned with their political rival, Mayor Walck." This allegation is bolstered by the allegation that Mayor Walck was barred from the meeting in which the termination decision was made. Although Saullo alleges the defendants' knowledge based on his belief, "[t]he *Twombly* plausibility standard" does not prevent a plaintiff from pleading facts "alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference

7

of culpability plausible." *Arista Records*, 604 F.3d at 120 (internal citations omitted).

Finally, the facts alleged in the complaint show that Saullo's failure to politically support the borough council was a substantial or motivating factor in the decision to terminate him. Saullo alleges that the defendants' criticisms of his performance were false. Such falsity raises the inference that the criticisms served merely as a smokescreen concealing an ulterior motive for terminating him: namely, discrimination on the basis of political association. This discriminatory motive is implied by the allegation that defendant DeMarco wanted to instate a political favorite by some way other than the civil service commission. The false pretenses for termination, combined with seeking to skirt protocol in hiring Ohl, raise the inference that Ohl's political ties to defendants—in tandem with Saullo's lack of such ties—motivated the decision to terminate Saullo.

The amended complaint pleads sufficient facts to support Saullo's First Amendment political patronage claim. The amended complaint describes how each defendant participated in ousting Saullo, and thus states a claim against each defendant. Defendants DeMarco, Zabroski, DeMicelli, and Sniscak allegedly voted to terminate Saullo to replace him with a political favorite. Saullo alleges that defendant Chief Smith made false accusations against Saullo and participated in his termination. The decision of the borough council to terminate Saullo is one officially adopted by the borough itself, and thus can fairly impose liability on the borough. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978) ("[I]t is when execution fo a government's policy or custom . . . by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Thus, this claim survives dismissal.

**C. Other Claims**

In paragraphs 55 and 56 of the amended complaint, Saullo clearly brings claims under the Fourth, Fifth, and Fourteenth Amendments. In his reply brief opposing the motion to dismiss, however, the plaintiff drops the following footnote:

> Defendants also move to dismiss various other claims, including procedural and substantive due process under the Fourth, Fifth and Fourteenth Amendments. There are no such claims in this case, and Plaintiff will not respond to the sections in Defendants['] motion which addresses these issues.

(Pl.'s Br. in Opp'n; Doc. 16 at 1 n.1.) The remainder of the plaintiff's brief focuses solely on his First Amendment political patronage claim. This footnote serves as an admission that these other claims were included in the amended complaint accidentally. Thus, the defendants' motion to dismiss these claims will be granted. Based on plaintiff's counsel's representation, inclusion of these claims was an error. Thus leave to amend would be futile, and therefore will not be granted. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile.").

### III. CONCLUSION

The motion to dismiss will be granted as to the erroneously-included Fourth, Fifth, and Fourteenth Amendment claims. As to the First Amendment political patronage discrimination claim, the motion will be denied. An appropriate order follows.

January 28, 2011  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge

9

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS SAULLO, | |
| Plaintiff, | CIVIL ACTION NO. 3:10-CV-00824 |
| v. | |
| BOROUGH OF NESQUEHOING, et al., | (JUDGE CAPUTO) |
| Defendants. | |

## ORDER

**NOW**, this 28th day of January, 2011, **IT IS HEREBY ORDERED** that the defendants' motion to dismiss (Doc. 14) is **GRANTED** as to the plaintiff's Fourth Amendment, Fifth Amendment, and Fourteenth Amendment Due Process claims. The motion is **DENIED** as to the plaintiff's claim of discrimination on the basis of political association in violation of the First Amendment.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge